UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY R. ZIKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case no. 4:09cv0199 TCM |
| | ) |
| ADVANCE AMERICA, CASH | ) |
| ADVANCE CENTERS OF MISSOURI, | ) |
| INC., and ADVANCE AMERICA, | ) |
| CASH ADVANCE CENTERS OF | ) |
| ILLINOIS, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This dispute is before the Court on the consolidated motion of defendants, Advance America, Cash Advance Centers of Missouri, Inc. ("Advance Missouri"), and Advance America, Cash Advance Centers of Illinois, Inc. ("Advance Illinois"), to dismiss the first amended complaint of plaintiff, Timothy R. Zike. For the reasons set forth below, the motion will be granted in part and denied in part.

## Background

Zike was employed by Advance Missouri as a manager trainee at its Moberly, Missouri, office until March 6, 2007, when he was fired. (Am. Comp. ¶ 4.) On May 25, the prosecuting attorney for the county in which Moberly is located charged Zike with the class C felony of appropriating three checks that were the property of Advance Missouri. (Defs. Ex. 2.) The charging complaint incorporated by reference a probable cause statement completed on April 27 by police officer T. R. Mitchell. (Id.) In that statement, Officer Mitchell averred that he had been contacted by a district director of Advance Missouri, Gerri Richardson, who had informed

him that on the last day of his employment Zike had taken three checks that were the property of Advance Missouri and had failed to return them, ignoring telephone calls and letters requesting that he do so. (Id.) Richardson further informed Officer Mitchell that Advance Missouri would be unable to collect the $1489.25 secured by the three checks without the checks themselves. (Id.) Attached to Officer Richardson's statement were Richardson's written statement, a letter to Zike requesting the return of four checks,[1] and loan statements signed by the writers of the checks at issue. (Id.)

On June 16, Zike was served with an arrest warrant. (Defs. Ex. 3.) The docket entry for June 18 indicates he posted bond.[2] (Id.) A show cause hearing was held on July 10, at which Zike was arraigned. (Id.)

On September 4, a preliminary hearing was held, at which Richardson testified. (Defs. Ex. 5.) Probable cause was found. (Defs. Ex. 3.) Zike waived a formal arraignment on October 10 and entered a plea of not guilty. (Id.) On June 3, 2008, the prosecuting attorney dismissed without prejudice the charges against Zike on the grounds that "essential witnesses left area and cannot be located." (Defs. Ex. 7.)

Zike alleges in his amended complaint that Richardson falsely testified during the preliminary hearing that (1) the makers of the three checks at issue were "somehow related" to him, (2) Advance Missouri could not recover on the loans backed by those checks without the checks themselves, and (3) Advance Missouri had never lost a check. (Am. Comp. ¶¶ 9, 10, 14.) These misrepresentations were crucial to the instigation of the charges against him because

---

[1] Charges were not pursued on one of the four checks.

[2] The bond indicates that Zike signed it on June 16 and it was approved on June 18.

they established the value of the loss to Advance Missouri, a necessary element of a felony stealing charge. (Id. ¶¶ 11, 12.)

In Count I of his amended complaint, Zike alleges that Advance Missouri affirmatively represented that he stole the three checks and that such representation "was made either with the belief that such allegation was false or without knowing whether said allegation was true or false." (Id. ¶ 16.) He seeks compensatory and punitive damages against Advance Missouri for malicious prosecution. (Id. at 6.) In Counts II and III, Zike seeks such damages on theories of false arrest/imprisonment for maliciously (Count II) instigating the stealing charges against him or for negligently (Count III) doing so.

In Counts IV through VI, inclusive, Zike pleads the same three causes of action against Advance Illinois on the grounds that this defendant, acting "in concert with one or more dual agents and employees of [Advance Missouri]," participated in the instigation of the charges against him. (Id. ¶¶ 40, 46, 54.[3])

Advance Missouri and Advance Illinois move for dismissal of all six counts on the grounds that they fail to state a claim or, alternatively, are prohibited under Mo.Rev.Stat. § 537.528.[4] Attached to the motion are copies of documents from the underlying state criminal case. (See Exhibits 1 through 7.) Zike disagrees, attaching his affidavit and copies of miscellaneous documents, including, among other papers, e-mails from Brian Beck, a regional

---

[3]Paragraph 54 does not include the words "one or more."

[4]Section 537.528 provides, in relevant part, that "[a]ny action seeking money damages against a person for conduct or speech undertaken or made in connection with a public hearing . . . is subject to a special motion to dismiss . . . ." Mo.Rev.Stat. § 537.528.1.

loss manager, and a copy of a faxed letter from his attorney to the prosecutor. (See Exhibits A through F.)

**Discussion**

"'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" **Benton v. Merrill Lynch & Co.**, 524 F.3d 866, 870 (8th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" **Ashcroft v. Iqbal**, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Id.** (citing Twombly, 550 U.S. at 556). This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." **Id.** "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" **Id.** (quoting Twombly, 550 U.S. at 557). This standard reflects "two working principles." **Id.** "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." **Id.** "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." **Id.** at 1950. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." **Id.**

When applying this standard, the Court generally assumes to be true the factual allegations in the complaint and construes those allegations in favor of the plaintiff. **Data Mfg., Inc. v. United Parcel Serv., Inc.**, 557 F.3d 849, 851 (8th Cir. 2009). The Court is not, however "'precluded in [its] review of the complaint from taking notice of items in the public record.'" **Levy v. Ohl**, 477 F.3d 988, 991 (8th Cir. 2007) (quoting Papasan v. Allain, 478 U.S. 265, 269 n.1 (1986)) (alteration in original), or of materials that do not contradict the complaint or are "necessarily embraced by the pleadings," **Noble Sys. Corp. v. Alorica Central, LLC**, 543 F.3d 978, 982 (8th Cir. 2008) (internal quotations omitted). "In Missouri . . . court records are public records." **Levy**, 477 F.3d at 991. If the Court does consider matters outside the pleadings, i.e., any written evidence that does not merely reiterate but substantiates the pleading, the motion to dismiss is to be treated as a motion for summary judgment. **McAuley v. Federal Ins. Co.**, 500 F.3d 784, 787 (8th Cir. 2007). See also **Levy**, 477 F.3d at 991 (noting that in the Eighth Circuit, conversion of a motion to dismiss to a motion for summary judgment is not automatic).

In determining the merits of the pending motion, the Court will consider court records, submitted by both parties, but will not consider other documents, including Zike's affidavit, that include substantiating or additional factual allegations.

Malicious Prosecution. Zike's first cause of action against Advance Missouri is for malicious prosecution. Under Missouri law, "a plaintiff in a malicious prosecution action 'must plead and prove six elements: (1) the commencement of a prosecution against the plaintiff; (2) instigation by the defendant; (3) termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) [that] the defendant's conduct was actuated by

- 5 -

malice[;] and (6) that the plaintiff was damaged.'" **Cassady v. Dillard Dep't Stores**, 167 F.3d 1215, 1219 (8th Cir. 1999) (quoting Bramon v. U-Haul, Inc., 945 S.W.2d 676, 684 (Mo. Ct. App. 1997)) (alterations in original); accord **White v. McKinley**, 519 F.3d 806, 815 (8th Cir. 2008); **Edwards v. Gerstein**, 237 S.W.3d 580, 582 (Mo. 2007) (en banc). "'Because malicious prosecution suits countervail the public policy that the law should encourage citizens to aid in the uncovering of wrongdoing the courts require strict compliance with the requisite elements.'" **Id.** at 583 (quoting Sanders v. Daniel In'tl Corp., 682 S.W.2d 803, 806 (Mo. 1984) (en banc)). Also, "Missouri law does not favor suits in malicious prosecution." **Zahorsky v. Griffin, Dysart, Taylor, Penner, and Lay. P.C.**, 690 S.W.2d 144, 151 (Mo. Ct. App. 1985) (citing Sanders, 682 S.W.2d at 806.)

The first two elements are not in dispute. Although Defendants concede the third element – termination of the action in favor of the plaintiff – Missouri law does not clearly construe the prosecutor's nolle prosequi of the action as a termination in Zike's favor. "For purposes of malicious prosecution, an underlying action is deemed terminated when: (1) a final judgment is entered on the merits; (2) the action is dismissed by the court *with prejudice*; or (3) the action is abandoned." **Doyle v. Crane**, 200 S.W.3d 581, 586 (Mo. Ct. App. 2006) (per curiam). A nolle prosequi by the prosecutor terminates a case for purposes of a malicious prosecution claim only when the prosecutor manifests an intent to abandon the case. **Id.** at 589. This intent must be shown on the record. **Id.**

To abandon is "[t]o give up absolutely." Oxford English Dictionary, http://dictionary.oed.com/cgi/entry/50000088?query_type=word&queryword=abandon (last visited Nov. 2, 2009). The prosecutor's nolle prosequi of the charges against Zike was based on the witnesses

having left the area and not being located. There is nothing to suggest that the charges would not be refiled should the witnesses return. Thus, it is questionable whether the criminal case against Zike was terminated in his favor. Cf. **Shinn v. Bank of Crocker**, 803 S.W.2d 621, 626-27 (Mo. Ct. App. 1990) (finding a clear intent to abandon case dismissed without prejudice by prosecutor pursuant to an agreement that the plaintiff was to pay court costs; dismissal without prejudice was leverage to ensure payment of such costs).

Because Defendants do not dispute, however, that Zike has sufficiently alleged the third element of his malicious prosecution claim, the Court will assume for purposes of the instant motion that this element has been sufficiently pled and will address the fourth, probable cause element. "Probable cause does not depend upon what may have ultimately proved to be the actual state of facts embraced in the previous action or proceeding, but instead upon the honest and reasonable belief of one who instigated its prosecution." **Zahorsky**, 690 S.W.2d at 151-52 (internal quotations omitted). To prevail on his malicious prosecutor claim, Zike must show that the court's probable cause determination following the preliminary hearing was procured by false or fraudulent testimony. **Mershon v. Beasely**, 994 F.2d 449, 453 (8th Cir. 1993). Richardson was the only witness to testify at the preliminary hearing. It is that testimony which determines whether Zike has sufficiently established the fourth element to survive the motion to dismiss.

Zike and Defendants vigorously dispute whether certain portions of Richardson's testimony was false, specifically, whether the makers of the three missing checks were related to Zike, whether Advance Missouri needed the checks to recover the loan proceeds, and whether Advance Missouri had lost checks before. If the testimony, false or not, was not

relevant to the charge of violating Mo.Rev.Stat. § 570.030, it would not support a probable cause determination. See **State v. Matic**, 84 S.W.3d 161, 166 (Mo. Ct. App. 2002) (purpose of preliminary hearing is to determine if probable cause exists to charge defendant).

Section 570.030 provides that "[a] person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." Richardson testified that Zike went to a bank to verify funds in three accounts; that he had with him three checks written by three people to secure loans; that he returned to the office; that the checks could not be located after his return; and that he did not respond to letters or telephone calls requesting the return of the checks. Disregarding the disputed testimony, outlined above, this undisputed testimony may establish the necessary elements of a stealing charge. It is, however, a close call. Cf. **Walker v. State**, 232 S.W.3d 586, 589 (Mo. Ct. App. 2007) (rejecting challenge to conviction under § 570.030 for stealing motor vehicle filed by man who had was entered car he did not own, started motor, put car in gear, but could not move it because of kill switch). Thus, Defendants' motion to dismiss Count I will be denied.

False Arrest/Imprisonment. Zike next alleges that false information given by Richardson maliciously or negligently led to his arrest and imprisonment. To prevail on these claims, Zike must show that he was confined against his will and without legal justification. **White**, 519 F.3d at 815; accord **Kurtz v. City of Shrewsbury**, 245 F.3d 753, 757 (8th Cir. 2001); **Desai v. SSM Health Care**, 865 S.W.2d 833, 836 (Mo. Ct. App. 1993). "The constituent elements of false imprisonment are the detention or restraint of the plaintiff against his will, and the unlawfulness of the detention or restraint." **Id.** Although a defendant may be liable for

instigating, causing or procuring the arrest," **id.**, "[m]erely providing information to the police is insufficient to find that the defendant caused the arrest," **Blue v. Harrah's North Kansas City, LLC**, 170 S.W.3d 466, 472 (Mo. Ct. App. 2005). Additionally, as noted by Defendants, in a claim of false arrest a "prima facie showing of the presence of probable cause is conclusive unless rebutted by evidence that false testimony was the basis of the charge and that the falsity, if so, was discoverable upon reasonable investigation." **Marcum v. Sagehorn**, 660 S.W.2d 426, 429 (Mo. Ct. App. 1983) (internal quotations omitted).

Defendants argue that Zike has failed to state a claim for false arrest or false imprisonment because (a) probable cause for his arrest existed and (b) he was never confined, having voluntarily surrendered and posting bond.

The analysis of the probable cause showing set forth in the section above informs the Court's resolution of Defendants' first argument. The worth of the second argument depends on materials outside the pleadings, i.e., Defendants' allegations that Zike voluntarily surrendered posted bond without ever being confined. The court docket, a public record submitted by Defendants, reflects that Zike was served with an arrest warrant. The bond, also submitted by Defendants, reflects that bond was posted on one day and approved two days later. Zike alleges he was detained against his will. The submitted public records do not refute this allegation.[5]

Counts II and III will not be dismissed.

---

[5] Zike's averment that he was held for two to three hours will be disregarded on the grounds that, as noted by Defendants, the affidavit is a matter outside the pleadings.

Advance Illinois. In Counts IV, V, and VI of his amended complaint, Zike alleges that Advance Illinois acted in concert with dual agents and employees of Advance Missouri and intentionally participated in his prosecution and arrest. In his memorandum opposing the motion to dismiss, Zike alleges that Brian Beck, see pages 3 and 4, above, is an employee of Advance Illinois and cites an answer to interrogatory in support of his allegation. He also attaches to his memorandum copies of e-mails from Beck to Richardson.

As noted above, a plaintiff must include in his complaint more than labels, conclusions, and "a formulaic recitation of the elements of a cause of action." **Benton**, 524 F.3d at 870. Disregarding e-mails from Beck, an allegedly Advance Illinois employee never mentioned in the amended complaint, that were not referred to in the amended complaint nor are submitted public records,[6] labels and conclusions of Advance Illinois acting in concert with agents or employees of Advance Missouri all that Zike provides. The factual allegations are of conduct by Advance Missouri and Richardson. There are no factual allegations that would support a claim of civil conspiracy, see **Trimble v. Pracna**, 51 S.W.3d 481, 500 (Mo. Ct. App. 2001) (defining a civil conspiracy "as an agreement or understanding between two or more persons to do an unlawful act or use unlawful means to do an otherwise lawful act"), or of Advance Illinois' liability as a joint tortfeasor for that conspiracy, see **Dueker v. Gill**, 175 S.W.3d 662, 673 (Mo. Ct. App. 2005).

Advance Illinois and Counts IV, V, and VI shall be dismissed.

Section 537.528. In addition to arguing that Zike has failed to state a claim in any of his six counts, Defendants argue that this action is barred by Mo.Rev.Stat. § 537.528, "enacted to

---

[6]See pages 4 and 5, above.

address strategic lawsuits against public policy ('SLAPPs')." **Cedar Green Land Acquisition, L.L.C. v. Baker**, 212 S.W.3d 225, 227 (Mo. Ct. App. 2007) (internal quotations omitted). "SLAPPs are brought primarily in retaliation for activities done in opposition to a plaintiff's business interests." **Id.**; accord **State ex rel. Diehl v. Kintz**, 162 S.W.3d 152, 157 n.6 (Mo. Ct. App. 2005).

Defendants urge the Court to consider this action as being within the reach of § 537.528 on the grounds that such a ruling "will serve the public interest of encouraging citizens continued participation in matters of public significance." (Defs. Mem. at 22.) Missouri cases respect the public policy of encouraging citizens in reporting wrongdoing by requiring strict compliance with the elements of malicious prosecution. See **Edwards**, 237 S.W.3d at 583. There is nothing in the language of § 537.528, nor in any legislative history cited by Defendants, that suggests the Missouri legislature intended to abrogate the tort of malicious prosecution when enacting § 537.528. Defendants' motion to dismiss this action as barred by that law will be denied.

## Conclusion

On review of the allegations in the first amended complaint and of the submitted public records, the Court finds that Zike has stated a claim in Counts I through III, inclusive of his first amended complaint. He has not done so in Counts IV through VI, inclusive. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED** as to Advance America, Cash Advance Centers of Illinois, Inc., and Counts IV through VI and is **DENIED** as to Advance America, Cash Advance Centers of Missouri, Inc., and Counts I through III. [Doc. 37]

**IT IS FURTHER ORDERED** that the claims of Timothy Zike against Advance America, Cash Advance Centers of Illinois, Inc., are DISMISSED.

**IT IS FINALLY ORDERED** that the stay of discovery entered on September 10, 2009, is lifted.  **Within ten days of the date of this Order**, the parties are to confer and submit a joint revised schedule for the deadlines set forth in paragraphs I(3)(b) through (5) of the case management order entered on March 23, 2009.  The case remains set for trial on April 12, 2010.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  3rd  day of November, 2009.