**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY R. ZIKE, ) | |
| ) | |
| **Plaintiff ,** ) | |
| ) | |
| vs. ) | **Case no. 4:09cv0199 TCM** |
| ) | |
| ADVANCE AMERICA, CASH ) | |
| ADVANCE CENTERS OF MISSOURI, ) | |
| INC., ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

This diversity action is before the Court on the opposed motion of defendant, Advance

America, Cash Advance Centers of Missouri, Inc. ("Advance America"), for summary judgment

on each of the three counts in the suit filed by a former employee, Timothy Zike.  Also pending

is the unopposed motion of Advance America to strike two documents submitted by Timothy

Zike ("Plaintiff") with his response to the motion for summary judgment.

## Background

Plaintiff was hired by Advance America in March 2006 as a manager in training at its

Moberly, Missouri, office.  (Def. Stat.[1] ¶ 1; Def. Ex. 6.)  On March 2, 2007, a reorganization

of Advance America resulted in the assignment of a new Divisional Director of Operations

("DDO"), Gerri Richardson, to the Moberly office.  (Def. Stat. ¶ 2.)  On Saturday, March 3,

Plaintiff did not show up for work when he was scheduled.  (Pl. Ex. G, Richardson Dep., at 7.)

Richardson spoke with him over the telephone and instructed him to go to the office.  (Id.)  She

---

[1]"Stat." refers to a party's statement of uncontroverted material facts that is either admitted or
uncontroverted by the opposing party.

thought Plaintiff was rude and insubordinate to her when they spoke. (Id. at 9, 11.) Plaintiff did go to the office. (Id. at 7.)

Richardson and Plaintiff first met on Tuesday, March 6, when Richardson went to the Moberly office. (Def. Stat. ¶ 3.) Another employee, Monitaka Brown, was also present. (Def. Ex. 1, Richardson Dep., at 44; Pl. Ex. F, Brown Dep., at 14.) When Richardson arrived at the office, Plaintiff was leaving to make a deposit at one bank and verify funds at another bank, Citizens Bank & Trust ("Citizens"). (Def. Stat. ¶ 4; Def. Ex. 1 at 44; Def. Ex. 2, Zike Dep., at 137-38.) The funds to be verified were those of three customers – Howard Elam, Mallory Lucas, and Tiffany White – who had written postdated checks to Advance America to secure payday loans. (Def. Stat. ¶ 4; Def. Ex. 1 at 45-46; Def. Ex. 28[2] at 20; Pl. Ex. D.) These customers had not made the required payment on their loans, therefore, under Advance America's policy, their checks were taken to their bank and converted to cashier checks if there were available funds in their accounts. (Def. Stat. ¶ 4; Def. Ex. 1 at 46.) The loan agreements included a caution reading, "If your check is returned by your financial institution for any reason, you will remain liable for full payment of the loan." (Pl. Ex. D.)

When Plaintiff returned from the bank errands, Richardson terminated his employment. (Def. Stat. ¶ 5.) The termination report, signed by Zike, Richardson, and Brown, lists "poor performance" as the reason for his termination. (Def. Ex. 7.) Rated as unsatisfactory are his attendance, cooperation, initiative, and quality of work. (Id.) Rated as satisfactory is his job knowledge. (Id.) When conducting an audit, Richardson discovered that four checks were not

_____

[2]Defendant's Exhibit 28 is the preliminary hearing transcript. This transcript was also submitted by Plaintiff as Exhibit O. Several other exhibits were submitted by both parties. The citation to one party's exhibit also submitted by the opposing party is a matter of convenience and does not reflect any preference for one party or the other.

in their expected places.  (Def. Stat. ¶ 7; Def. Ex. 28 at 7; Def. Ex. 1 at 17; Def. Ex. 3 at 75.)

In addition to the checks written by Elam, Lucas, and White, one written by Jack Zike was

missing.  (Id.; Def. Ex. 3 at 42.)  Richardson telephoned Plaintiff and left a voicemail message

asking that the checks be returned.  (Def. Stat. ¶ 8.)  He did not return her call.  (Id.)  Jack

Zike's  check was later found to have been stuck to a folder.  (Id. ¶ 11.)

     The next day, at Richardson's direction, Brown and an Advance America employee from

another store, Tony Garrett, went to Citizens and asked the teller, Stacey Ingersoll, if Plaintiff

had been there with checks made payable to Advance America to verify funds.  (Def. Stat. ¶ 9.)

Ingersoll stated that he had and that the accounts at issue had all been closed.  (Def. Ex. 3 at

51.)  Brown called Plaintiff five or six times and left messages asking that he contact her.  (Pl.

Ex. F at 26.)  He eventually did.  (Id.)  She told him that Richardson was alleging that he had

stolen some checks.  (Id. at 26-27.)  He replied that the checks were, as he had been instructed

to do, placed between two papers and had been returned to the store.  (Id. at 27, 119.)  Brown

relayed this response to Richardson.  (Id. at 27-28.)

     Also the day after Plaintiff was fired and he failed to return Richardson's phone call,

Richardson called Brian Beck, Advance America's regional loss prevention manager, and told

him that four checks were missing from the Moberly store.  (Id. ¶¶ 10, 11; Def. Ex. 1 at 17.)

Beck telephoned Plaintiff at least once[3] to ask about the missing checks and left messages for

him to return the call.  (Def. Stat. ¶ 12; Def. Ex. 4, Beck Dep., at 18, 48-49; Def. Ex. 12 at 4.)

Plaintiff did not call him.  (Def. Stat. ¶ 13; Def. Ex. 12 at 4.)  On March 15, Beck sent Plaintiff

a letter by regular mail and by return receipt requested mail.  (Def. Ex. 16.)  The letter stated

_____

     [3]Beck testified he called twice; Plaintiff remembers only one message.

that Plaintiff had failed to respond to two telephone voicemail messages and was a ten-day demand for the return of Advance America's property, specifically, the four checks.[4] (Id.) The letter instructed Plaintiff to call Beck or Richardson if he had any questions and to return the checks within the ten days. (Id.) It also cautioned Plaintiff that his failure to respond "will result in future legal action." (Id.)

Eleven days later, Beck e-mailed Richardson and requested that she file criminal charges against Plaintiff for the theft of the four checks. (Def. Ex. 17; Def. Ex. 1 at 19, 21.) Thereafter, Richardson contacted the Moberly Police Department and gave a statement to Officer T. R. Mitchell. (Def. Exs. 15, 18.) She reported the substance of her interaction with Plaintiff on Saturday, March 3; her firing of him on March 6; and her inability after conducting an audit that same day to locate the checks from White, Elam, and Lucas. (Id.) She further reported that two Advance America employees had verified with Citizens that Plaintiff had been there on March 6 with the checks and that Plaintiff had failed to return her telephone call. (Id.) Officer Mitchell's typed report includes the following paragraph:

> Richardson also advised that since [sic] Advance America does not have the physical check in their possession that they cannot collect on the check, nor could they take civil action against the people as they do not have the check to send to the bank and the check being returned from the bank marked in some manner stating that there was not sufficient funds to cover the check. Richardson advised that since [sic] this is not able to be done the [sic] Advance America is out $1489.25.

(Def. Ex. 15.) Officer Mitchell was given copies of the loan agreements signed by the makers of the three lost checks. (Id.)

---

[4]The check from Jack Zike was not found until approximately April 5. (Def. Ex. 1 at 24.) The discovery was reported to Officer Mitchell. (Id. at 25.)

Richardson knew that Plaintiff could not cash the three checks or deposit them into his own account.  (Pl. Ex. G at 63.)  It was her understanding, however, that Advance America could not legally pursue the makers of the checks without those checks.  (Id. at 64; Def. Ex. 1 at 74-75.)  Advance America's "Legal Actions" policy in effect at the time provided that legal action was to be taken for collections only as a last resort.  (Def. Ex. 1 at 74; Def. Ex. 26; Def. Reply Ex. G ¶¶ 4-5.)  Before such action was to be taken, the company had to "be in possession of the returned check."  (Def. Ex. 26.)  The DDO had to review and sign a "Legal Action Worksheet" and forward it to the regional director of operations for review and signature approval.  (Id.; Def. Reply Ex. G ¶¶ 6-7.)  One of the six questions on the worksheet was whether Advance America had possession of the check returned for insufficient funds.  (Id.)

A few days after taking Richardson's statement, Officer Mitchell took Brown's statement.  (Def. Exs. 13, 14.)  She also related Plaintiff's failure to be at work as scheduled that Saturday in March; his termination the following Tuesday; her inability to locate the checks from Elam, Lucas, and White after his termination; her inquiry at Citizens about whether Plaintiff had had the checks and had verified funds in the relevant accounts; and her eventual conversation with Plaintiff after she contacted him about his last paycheck and his response that he did not have the checks.  (Id.)  Mitchell also took Ingersoll's statement.  (Def. Ex. 20.)  She remembered Plaintiff coming with some checks one day and two other employees of Advance America coming in the next day and inquiring about the checks Plaintiff had presented.  (Id.)  She could not remember specific dates or anything about the checks he had had.  (Id.)

On April 27, Officer Mitchell, "upon [his] oath and under the penalties of perjury," signed a "Probable Cause Statement."  (Def. Ex. 21.)  Included in that statement were (1)

Richardson's report that Plaintiff had taken three checks to Citizens on March 5 and that she had been unable to find the checks after Plaintiff returned from the bank and was fired, that she had tried to contact Plaintiff but had not been successful, and that Plaintiff had not responded to the ten-day letter Advance America had sent him; (2) Brown's report that she had contacted Ingersoll at Citizens and been told that Plaintiff had presented checks to her to confirm funds; (3) Richardson's statement that Advance America could not bring a civil action without having the checks marked by a bank with an indication that they would not be honored; and (4) Plaintiff's statement that his lawyer had told him not to answer any questions.  (Id.)  Mitchell concluded that there was probable cause to believe Plaintiff had committed a criminal offense.  (Id.)

Officer Mitchell had wanted to meet with Plaintiff on the Monday after he had called him.  (Def. Ex. 2, Zike Dep., at 178.)  Plaintiff told him that his attorney could not meet then.  (Id.)  Mitchell replied that if he could not meet on Monday, Mitchell would send the information he had to the prosecutor.  (Id.)  Plaintiff did not ask him to reschedule and was content with Mitchell making his report.  (Id. at 179.)

After receiving Mitchell's report, the prosecutor, Mike Fusselman, made an independent determination that there was probable cause to charge Plaintiff with felony theft.  (Def. Ex. 5, Fusselman Dep., at 47, 66.)  He then filed a one-count felony complaint against Plaintiff.  (Def. Ex. 22.)  The complaint read, in relevant part: "The Prosecuting Attorney . . . charges that the defendant . . . committed the class C felony of stealing . . . in that on or about March 5, 2007, . . . the defendant appropriated 3 checks, Check #1741 for $468.00, Check #122806 for $582.00 and Check #1210 for $438.75, which property was in the possession of Advance America, and

the defendant appropriated such property without the consent of Advance America and with the purpose to deprive it thereof." (Id.)

Sometime in June 2007, Plaintiff learned from his cousin Patrick McKenzie, a deputy with the sheriff's department, that there was a warrant for his arrest. (Def. Stat. ¶ 23; Def. Ex. 2 at 211.) Plaintiff asked what the charges were and if he would be arrested at his home. (Def. Ex. 2 at 212.) McKenzie replied that he would be arrested if he was pulled over or something similar and advised Plaintiff to turn himself in and post bond. (Id.) The same day, Plaintiff's mother picked him up, drove him to the sheriff's office, and arranged for a bondsman to meet them there. (Id. at 212-17.) The bondsman arrived 30 to 45 minutes after they did. (Id. at 217.) Plaintiff signed the bond. (Id. at 225.) A man in the office called someone to inquire if Plaintiff could be released after he had signed the bond and was told that Plaintiff had to wait until the warrant papers had arrived. (Id. at 226.) Plaintiff also had to be fingerprinted. (Id.) After the warrant papers had arrived and he had been fingerprinted, Plaintiff was free to go. (Id. at 227.) Plaintiff was never handcuffed or taken to a jail cell. (Id. at 228; Def. Stat. ¶ 26.) He waited in the same room he had first entered. (Def. Ex. 2 at 228.) The entire process took approximately two hours. (Id.) During that time, Plaintiff never asked if he could leave. (Def. Stat. ¶ 27.)

A preliminary hearing was held in September. (Def. Ex. 28.) The only witness to testify was Richardson.[5] (Id.) Consistent with her report to Officer Mitchell, she testified that Advance America could not collect on accounts if they did not have possession of the

---

[5]At the time of the hearing, Brown was no longer employed by Advance America. (Def. Ex. 28 at 35.) She was described by Fusselman in his deposition as a "frequent-flyer witness." (Pl. Ex. J, Fusselman Dep., at 13.) "[S]he's either being prosecuted or she is a witness from time to time and she tends to disappear on us." (Id.)

associated checks. (Id. at 9, 26, 27.) Plaintiff would not be able to cash the checks at issue. (Id. at 13.) Asked if checks had ever been lost at the Moberly store, she replied that they had not to her knowledge or during her time there. (Id. at 14, 29-30.) Several times during the hearing, Richardson included Jack Zike in the group of customers whose checks had been taken by Plaintiff to the bank and not found during the audit. (Id. at 8-9, 15.) At other times, she named only Elam, Lucas, and White. (Id. at 15, 20.) She did not know if the check writers were relatives or friends of Plaintiff. (Id. at 18.) What she did know was that Plaintiff took the three checks to Citizens to verify whether there were funds in the associated accounts and that the checks could not be located after that. (Id. at 21.) Ten minutes after Plaintiff was fired, she had checked the paperwork that he had left and could not find the checks. (Id.) She did not know if he had brought the checks back to the store. (Id. at 23.) Asked by the court if she was surmising that Plaintiff had taken the checks or if she knew so, Richardson replied that she was surmising he had. (Id. at 42.) "I have no documentation that I can say he took them. All I know is he left with them out of my center and they were not returned on the desk with the other stacks of checks and the deposit." (Id.)

Plaintiff's attorney argued to the court that there was no evidence that Plaintiff removed the checks and no evidence that the checks were not lost, misplaced, or thrown away. (Id. at 46.) The court found probable cause. (Def. Ex. 29; Def. Ex. 5 at 54.) Plaintiff was arraigned in October and was to be tried in June 2008. (Def. Exs. 29, 30.)

A subpoena to appear for trial on June 16 was issued on May 21 for Ingersoll and received by the Moberly sheriff's office the next day. (Def. Ex. 30.) On May 27, the sheriff's

office received a trial subpoena for Garrett. (Def. Ex. 31.) Neither witness was located.[6] (Def. Exs. 30, 31.) On June 3, Fusselman dismissed the case "without prejudice because essential witnesses left area and [could not] be located." (Def. Ex. 32.) Ingersoll was needed to establish that Plaintiff had brought the checks at issue to Citizens the day he was fired. (Def. Ex. 5 at 57.) The same day, Plaintiff's attorney had faxed[7] Fusselman portions of the preliminary hearing transcript, a copy of Lucas' loan agreement with the caution about remaining liable if his check was returned by the bank for insufficient funds, a small claims court petition filed on behalf of Advance America against Marry Moffett, another petition filed against William Patterson, and a copy of the docket sheet for each of the two cases listing a judgment. (Pl. Ex. L.) Nothing in the petitions or the docket sheets indicates whether a returned check was presented as evidence. Fusselman testified in his deposition that he does not know if he had reviewed the transmission when he made his decision to file the dismissal. (Def. Ex. 5 at 60.) He was "fairly sure" he did not see the transmission, and was sure that the substance of that transmission had no bearing on his decision. (Id. at 61.) The case was dismissed because the witnesses could not be served. (Id.)

The dismissal of the case did not "evidence an intent to abandon" it. (Del. Ex. 5 at 52.) Fusselman testified in his deposition that if it was known that the case was not going to be filed again – because, for instance, someone was dead – it would have been dismissed with prejudice. (Id. at 53.) The case against Plaintiff was dismissed because the witnesses could not be found.

---

[6]A notation on the Garrett subpoena indicated he had moved to Iowa. (Def. Ex. 38.)

[7]Plaintiff's attorney had also written Fusselman asking that the charges be dismissed and explaining why. (Def. Ex. 24.) This handwritten letter is not dated and does not have the facsimile transmission information that appears at the top of the papers faxed on June 3. Nor is it marked as an exhibit shown to Fusselman during his deposition.

(Id.) He was asked the following question: "Plaintiff Zike stated in this case . . . it is a routine practice of the Randolph County Prosecutor when dismissing cases that it's based on the failure to locate essential witnesses as opposed to the actual reason; is that true, sir?" (Id.) He replied that it was not true and queried how Plaintiff would know such because he did not work in the prosecutor's office and had no idea of the work that was done there. (Id.) Asked again if that was the practice of the prosecutor's office, Fusselman replied, "Absolutely not." (Id. at 52-53.)

Fusselman further testified that he did not anticipate refiling the charges before the statute of limitations runs in March 2011. (Pl. Ex. J at 12-13.) "The witnesses ha[ve] left to other places" and "it's a property crime." (Id. at 12.) He could not justify using the resources for refiling the case." (Id.)

Plaintiff alleges in his amended complaint that Richardson falsely testified during the preliminary hearing that (1) the makers of the three checks at issue were "somehow related" to him, (2) Advance America could not recover on the loans backed by those checks without the checks themselves, and (3) Advance America had never lost a check. (Am. Comp. ¶¶ 9, 10, 14.) These misrepresentations were crucial to the instigation of the charges against him because they established the value of the loss to Advance America, a necessary element of a felony stealing charge. (Id. ¶¶ 11, 12.) In Count I, he seeks compensatory and punitive damages for malicious prosecution. (Id. at 6.) In Counts II and III, respectively, he seeks such damages on theories of false arrest/imprisonment for maliciously instigating the stealing charges against him or for negligently doing so.[8] Advance America argues that it is entitled to summary judgment on the

---

[8]Plaintiff's amended complaint included three counts, Counts IV through VI; these counts have been dismissed.

(1) malicious prosecution count because (a) there was a finding of probable cause, (b) there was no legal malice, and (c) it did not instigate the charges against Plaintiff; (2) the malicious false arrest/imprisonment count because (a) there was probable cause, (b) it did not instigate the charges against him, and (c) he was never detained against his will; and (3) the negligent false arrest/imprisonment charge for the same three reasons as defeat Count II. Plaintiff counters that genuine issues of material fact remain which only a jury can resolve.

### Discussion

Summary Judgment Standard. "'Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" **Loeb v. Best Buy Co.**, 537 F.3d 867, 871 (8th Cir. 2008) (quoting Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007)). When making this determination, the Court views the evidence, and any reasonable inferences therefrom, in the light most favorable to the nonmovant, Plaintiff. **Id.** In opposing a properly-supported motion for summary judgment, however, Plaintiff may not "merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." **Bass v. SBC Commc'ns, Inc.**, 418 F.3d 870, 872-73 (8th Cir. 2005). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" **Id.** (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Malicious Prosecution. Plaintiff's first cause of action against Advance America is for malicious prosecution. Under Missouri law, "a plaintiff in a malicious prosecution action 'must plead and prove six elements: (1) the commencement of a prosecution against the plaintiff; (2) instigation by the defendant; (3) termination of the proceeding in favor of the plaintiff; (4) the

want of probable cause for the prosecution; (5) [that] the defendant's conduct was actuated by malice[;] and (6) that the plaintiff was damaged.'" **Cassady v. Dillard Dep't Stores**, 167 F.3d 1215, 1219 (8th Cir. 1999) (quoting <u>Bramon v. U-Haul, Inc.</u>, 945 S.W.2d 676, 684 (Mo. Ct. App. 1997)) (alterations in original); <u>accord</u> **White v. McKinley**, 519 F.3d 806, 815 (8th Cir. 2008); **Edwards v. Gerstein**, 237 S.W.3d 580, 582 (Mo. 2007) (en banc). "'Because malicious prosecution suits countervail the public policy that the law should encourage citizens to aid in the uncovering of wrongdoing the courts require strict compliance with the requisite elements.'" **Id.** at 583 (quoting <u>Sanders v. Daniel In'tl Corp.</u>, 682 S.W.2d 803, 806 (Mo. 1984) (en banc)). All six elements must be proved for a submissible case. **Perry v. Dayton Hudson Corp.**, 789 S.W.2d 837, 840 (Mo. Ct. App. 1990). If Advance America establishes facts that negate any one of the six elements, summary judgment may be entered in its favor. **Thompson v. Wal-Mart Stores, Inc.**, 890 S.W.2d 780, 782 (Mo. Ct. App. 1995).

The first element is present; a prosecution was undisputedly commenced against Plaintiff.

The second element requires that the prosecution be instigated by Advance America. The parties dispute this element. The relevant facts are undisputed. At the behest of Beck, Richardson contacted the Moberly police department and subsequently gave a statement to Officer Mitchell. Officer Mitchell also took the statement of another Advance America employee at the time, Brown, and of a teller at Citizens. Officer Mitchell then completed and signed a probable cause statement; a felony complaint was filed by the prosecutor after he found probable cause; and Plaintiff was arraigned after a judge found probable cause following a preliminary hearing.

"[M]ere provision of information to the authorities does not constitute instituting or continuing a criminal proceeding." **Hardge-Harris v. Pleban**, 741 F. Supp. 764, 774-75 (E.D. Mo. 1990) (internal quotations omitted) (alteration in original).  Nor does "[m]ere giving of honest assistance and information which leads to a prosecution . . . necessarily render a person liable as an instigator of that prosecution . . . ." **Id.** at 774 (last alteration in original).  "Mere" means, in this context, "that is barely or only what it is said to be." Oxford English Dictionary, http://dictionary.oed.com/cgi/entry/00306224?query_type=word&queryword=mere (last visited April 26, 2010).  Rather, "[t]o instigate means 'to stimulate or goad to an action, especially a bad action . . . ." **Crow v. Crawford & Co.**, 259 S.W.3d 104, 114 (Mo. Ct. App. 2008) (quoting Snider v. Wimberly, 209 S.W.2d 239, 242 (1948)).  "Instigation requires that there be some affirmative action by way of encouragement, advice, pressure, or the like in the institution of the prosecution." **Id.** at 115.  Simply triggering an investigation is insufficient.  **Id.**  Thus, in **Beard v. St. Mary's Health Ctr.**, 735 S.W.2d 27, 29 (Mo. Ct. App. 1987), the appellate court found that a malicious prosecution case based on a telephone call for police intervention after seeing hospital equipment taken from where it should have been while concealed under dirty linen was "devoid of any proof that defendant instigated" the theft charges against the plaintiff.  "[D]efendant did not through any of its employees sign a complaint or have any further discussion of the matter with the police." **Id.**  Nor did any of defendant's employees testify at the preliminary hearing.  **Id.**  Accord **Rankin v. Venator Group Retail, Inc.**, 93 S.W.3d 814, 819-20 (Mo. Ct. App. 2002); **Pride v. Lamberg**, 366 S.W.2d 441, 444-45 (Mo. 1963).

Although it is a close question, the Court finds that there remains a genuine issue of material fact as to whether Advance America instigated the criminal proceedings against

Plaintiff. Beck testified that he decides whether to prosecute employees. Richardson testified that Beck requested that she file criminal charges against Plaintiff. She and Brown, another Advance America employee, gave statements to Officer Mitchell. Those statements formed the substance of his probable cause statement.[9] See **Jacobs v. Bonser**, 46 S.W.3d 41, 49 (Mo. Ct. App. 2001) (finding that defendant instigated criminal proceedings when there was no evidence that prosecuting attorney's information was based on anything other than defendant's complaint). Cf. **Schumer v. Craig Distributing Co.**, 745 S.W.2d 163, 166 (Mo. Ct. App. 1987) (finding that defendant had not instigated criminal proceedings by speaking with prosecutor about check returned for insufficient funds and by bringing check and a ten-day demand letter of insufficient funds to prosecutor's office; defendant had not requested that charges be filed and prosecutor had not consulted with defendant). She also testified at the preliminary hearing. See **Beard**, 735 S.W.2d at 29 (considering fact that defendant's employees had *not* testified at preliminary hearing as factor favoring conclusion that defendant had not instigated prosecution).

Although the Court finds the instigation element to be in dispute, the Court disagrees with Plaintiff's repeated argument that Richardson was not honest when stating that Advance America could not bring a civil action to recover monies loaned without the checks or that Advance America had never lost a check.

"The giving of honest assistance and information does not necessarily render a person liable as an instigator, but a person may be liable for giving false information to the authorities." **Ladeas v. Carter**, 845 S.W.2d 45, 50 (Mo. Ct. App. 1992); accord **Baker v. St. Joe Minerals**

---

[9]As noted above, although Ingersoll also gave a statement, she could not recall any specific information about the checks or the date of Plaintiff's visit.

**Corp.**, 744 S.W.2d 887, 889 (Mo. Ct. App. 1988). Richardson told Officer Mitchell and testified that Advance America needed the checks given by the borrowers and returned by the borrowers' banks before filing suit against the defaulting borrowers. In support of this requirement, she cited Advance America policy. That policy does require that the returned check be in Advance America's possession before suit may be filed. Under state regulation, "[a] check left with a section 500 company[10] shall be returned to the maker immediately upon payment, or renewal, of the loan."[11] Mo. Code Regs. 20, § 1140-11.030(7) (footnote added). Clearly, this regulation makes it more difficult for Advance America to establish that a loan has not been paid if it is not in possession of the check. Its policy requiring possession is not nonsensical.

As an indication that Richardson was not being truthful when she cited the Advance America policy, Plaintiff relies on two judgments entered in small claims courts against Advance America customers. These judgments, however, are not probative. There is no reference to the proof presented in either case. Plaintiff also cites the caution on the loan agreement that the borrower would remain liable for full payment of the loan if his or her check was returned by the bank for any reason. This statement is irrelevant to whether Advance America's policy requires that it have possession of a returned check before bringing a legal action to recover on a defaulted loan.

---

[10]A section 500 company is a company in the business of making unsecured loans of five hundred dollars or less and must, under Mo.Rev.Stat. § 408.500.1, obtain a license from the director of finance. See **Barry Serv. Agency Co. v. Manning**, 891 S.W.2d 882, 886 (Mo. Ct. App. 1995). A post-dated check is considered security or collateral. Mo. Code. Regs. 20, § 1140-11.030(7).

[11]State regulations also provide that a section 500 company may not recover any interest or fees on a loan if a post-dated check is deposited prior to its stated date. Mo. Code Regs. 20, § 1140-11.030(7).

Similarly, there is nothing in the record to refute Richardson's testimony that the Moberly store had never lost a check to her knowledge or since the store was within her district.

The third element in a malicious prosecution case is termination of the proceeding in favor of the plaintiff. Termination occurs when "(1) a final judgment is entered on the merits; (2) the action is dismissed by the court *with prejudice*; or (3) the action is abandoned." **Doyle v. Crane**, 200 S.W.3d 581, 589 (Mo. Ct. App. 2006). In the instant case, there was no final judgment on the merits and the case was not dismissed by the court with prejudice. "[W]hen a case is dismissed *without* prejudice the dismissal constitutes a termination in favor of the defendant – for the purpose of a subsequent malicious prosecution suit by him – *only* when the party who initiated the case manifests an intent to abandon it." **Id.** (internal quotations omitted). Thus, a prosecutor's dismissal of a case without prejudice does not terminate the case in favor of a defendant "unless it [can] be shown from the record that the prosecutor, in dismissing without prejudice, manifested an intent to abandon the prosecutions." **Id.** A *nolle prosequi* "in and of itself" is not a termination in favor of the defendant. **Id.**; accord **Mitchell v. Village of Four Seasons**, 2009 W.L. 1543761, *8 (W.D. Mo. 2009). The question whether a prosecutor's dismissal of charges without prejudice is a termination in favor of the defendant is, absent a conflict as to the facts relative to the circumstances of the dismissal, a question of law for the court to decide. **Cowan v. Gamble**, 247 S.W.2d 779, 780 (Mo. 1952) (per curiam) (citing Restatement of Torts § 673(1)(b)).

In **Shinn v. Bank of Crocker**, 803 S.W.2d 621, 627 (Mo. Ct. App. 1990), the appellate court found that a prosecutor's dismissal without prejudice was a termination in the defendants's favor because the record reflected that there had been an agreement that the defendants were

to pay costs and the "without prejudice" qualification was only included to provide the prosecutor with a remedy, i.e., the refiling of the charges, if the defendants failed to do so.[12] See also **Helenthal v. Polk**, 4:08cv1791 CEJ, 2010 W.L. 546905, *1 (E.D. Mo. 2010) (finding that dismissal without prejudice *for failure to prosecute* reflected an intent to abandon the claim).

The prosecutor in the criminal case against Plaintiff testified that he dismissed the case without prejudice because essential witnesses could not be located. Indeed, the dismissal so read. See Restatement (Second) of Torts, § 661 (A.L.I. 2009) ("The formal abandonment of proceedings by a public prosecutor is not a sufficient termination in favor of the accused if the abandonment is due to the impossibility or impracticability of bringing the accused to trial."); **Mann v. Geona Twp.**, 2002 W.L. 221112, *4 (Ohio Ct. App. 2002) (dismissal without prejudice of case subject to representation to grand jury was not termination in favor of defendant). Plaintiff has failed to produce any evidence establishing a reason for the dismissal that would reflect on his innocence. He cites the faxed documents sent to the prosecutor the day of the dismissal. These documents did not, however, include any new information or present the old information in a light not previously shone when the trial court bound Plaintiff over for trial. Moreover, Fusselman testified that he had not read the documents before filing the dismissal, and, regardless, would not have been influenced by them. Plaintiff has failed to establish a genuine factual dispute about the termination of the charges against him.[13] Cf.

---

[12]The Restatement lists an agreement of compromise with an accused as an exception to the general rule that a dismissal without prejudice of criminal charges is not a sufficient termination for malicious prosecution. Restatement (Second) of Torts, § 660(a) (A.L.I. 2009).

[13]Plaintiff cites **Turman v. Schneider Bailey, Inc.**, 768 S.W.2d 108 (Mo. Ct. App. 1988), in support of his argument that the prosecutor's dismissal was a termination in his favor. His reliance on this case is misplaced. The dismissal at issue in **Turman** was the dismissal by a court of the present defendants' replevin action for lack of jurisdiction. **Id.** at 113. In the interim between the dismissal and

- 17 -

**Davidson v. Castner-Knott Dry Goods Co.**, 202 S.W.3d 597, 605-06 (Ky. Ct. App. 2006) (finding summary judgment inappropriate in case in which dismissal without prejudice read that it was "because attainment of evidence necessary to fully prosecute [defendant] was not readily available"; although the wording of the dismissal *did not* reflect on the merits of the case, as necessary under the Restatement for a malicious prosecution action, there was also evidence that the prosecutor had known two months before filing charges based on defendant's check to a retailer being returned because the account was closed that the defendant had reported her checks stolen two months before the check at issue had been written).

The fourth element of a malicious prosecution action requires a showing that there was no probable cause for the prosecution. "Where the facts pertaining to the issue are not in dispute, the determination of whether probable cause existed is a question of law for the court . . . ." **Simpson v. Indopco, Inc.**, 18 S.W.3d 470, 474 (Mo. Ct. App. 2000); accord **Davis v. Bd. of Educ. of City of St. Louis**, 963 S.W.2d 679, 687-88 (Mo. Ct. App. 1998). "The probable cause to initiate criminal proceedings sufficient to rebut a claim of malicious prosecution is 'reasonable grounds for suspicion,[14] supported by circumstances in evidence sufficiently strong to warrant a cautious man in his belief that the person accused is guilty of

---

the filing of the malicious prosecution action, the defendants had obtained possession of the property at issue and the refiling of the action would be against their interests. **Id.** In the instant case, there is no evidence that the criminal charges were dismissed for any reason other than the absence of essential witnesses and no evidence that any consideration other than economics, including the merits of the case, would preclude its refiling.

[14]The two Missouri appellate cases cited by Plaintiff for the holding that slight evidence is sufficient to establish the absence of probable cause in a malicious prosecution action are cases in which the seminal action was a civil action and in which the "slight evidence" criteria was specifically linked to it being so. **Diehl v. Fred Weber, Inc.**, — S.W.3d —, 2010 W.L. 286744, *5 ( Mo. Ct. App. 2010) (per curiam) (underlying action was civil defamation suit); **Ehrhardt v. Herschend**, 294 S.W.3d 58, 60-61 (Mo. Ct. App. 2009) (same)

the offense charged.'" **Simpson**, 18 S.W.3d at 474 (quoting <u>Thompson</u>, 890 S.W.2d at 782).

"'[R]easonable grounds' . . . means that under the circumstances an ordinarily careful and prudent person after having made a reasonable inquiry would have believed the facts alleged and that the judicial proceeding was valid." **Thompson**, 890 S.W.2d at 782 (internal quotations omitted). When deciding whether such grounds existed, the facts are to "be considered as the prosecuting party could have reasonably believed them to be under the circumstances at the time." **Perry**, 789 S.W.2d at 841. A charge initiated by a prosecuting attorney "on his sworn information and belief" "amounts to a prima facie showing that probable cause did exist for the prosecution." **Id.** (citing <u>Moad v. Pioneer Finance Co.</u>, 496 S.W.2d 794, 798-99 (Mo. 1973) (en banc)); <u>accord</u> **Jacobs**, 46 S.W.3d at 50. A prima facie showing is also made by a judge's finding of probable cause after a preliminary hearing. <u>See</u> **Moad**, 496 S.W.2d at 798-99; <u>accord</u> **Montgomery GMC Trucks, Inc. v. Nunn**, 657 S.W.2d 334, 336 (Mo. Ct. App. 1983) (binding over after preliminary hearing is prima facie showing of probable cause).

Advance America has made a prima facie showing of probable cause for the prosecution of Plaintiff for stealing, in violation of Mo.Rev.Stat. § 570.030. Section 570.030 defines stealing as when a person "appropriates property of services of another with the purpose to deprive him or her thereof, either without his or he consent or by means of deceit or coercion." Officer Mitchell submitted statements showing that Plaintiff took three checks to Citizens to verify funds, was fired when he returned from that errand, left the store, and did not return Richardson's or Beck's requests for information about the location of the checks after an audit

revealed they were missing.[15]  The prosecutor filed a complaint based on these factual allegations.  The court found probable cause based on similar testimony.

A prima facie showing of probable cause may be rebutted by showing that false testimony was the basis of the charge and that this falsity was discoverable upon reasonable investigation.  **Ulmer v. Associated Dry Goods Corp.**, 823 F.2d 1278, 1282 (8th Cir. 1987) (citing Moad, 496 S.W.2d at 799).  Plaintiff argues that false testimony was given by Richardson  that the makers of the three checks were his family or friends and that Advance American needed the checks to pursue civil actions against the makers.  Richardson explicitly testified, however, that she did not know if the makers were related to, or friends of, Plaintiff. Cf. **Grimes v. Bagwell**, 837 S.W.2d 554, 558 (Mo. Ct. App. 1992) (finding no probable cause when defendant in malicious prosecution action had misrepresented essential facts to prosecuting attorneys).  And, the evidence establishes that it was Advance America's policy that they needed possession of the checks to pursue civil actions.  The regulation requiring that checks be returned to their makers when loans are repaid lends support to this policy.

The malicious prosecution plaintiffs in **Mershon v. Beasley**, 994 F.2d 449 (8th Cir. 1993), cited by Plaintiff, argued that the defendant had intentionally created a false impression when testifying at the state court preliminary hearing in the underlying criminal case.  **Id.** at

---

[15]Plaintiff argues that "[s]tealing from your employer on the very day you are meeting your new boss for the first time is hardly a way to impress the new boss" and that such an action "shows how bizarre [Advance America's] claim of theft is."  (Mem. at 4.)  This scenario misrepresents the relevant time line.  Plaintiff was telephoned by his new boss, Richardson, the Saturday before he was fired when she wanted to know why he had failed to report to work.  He first met her the following Tuesday when she was entering the store and he was leaving to go on his errand.  He testified he did not know then he was going to be fired.  He was fired after he returned from verifying the funds.  He left the store.  The checks were missing.  Therefore, the appropriation of the checks would have occurred after he met his new boss and was fired.  Plaintiff does not argue that taking your former employer's checks after being fired is a bizarre motive.

453. Applying Missouri law, the court held that the plaintiffs had to prove that "the probable cause determination reached at the state court preliminary hearing was *procured* by false or fraudulent testimony." **Id.** (emphasis added). Thus, testimony that is false or fraudulent must also be material to a probable cause finding. **Id.** In the instant case, as explained above, Plaintiff has failed to establish that Richardson's testimony was either false or fraudulent. See **Perry**, 789 S.W.2d at 841 (finding that malicious prosecution plaintiff had failed to rebut prima facie showing of probable cause for filing theft charges when plaintiff had answered allegations of shoplifting with non-cooperation and had never produced receipt which he argued complaining witness should have shown prosecutor). The evidence is that the findings of probable cause were based, in relevant part, on Richardson's accurate statements and testimony that she did not know if the makers of the checks were connected to Plaintiff and that it was Advance America's policy to require possession of returned checks.

"Malice and want of probable cause must coexist to warrant an action for malicious prosecution . . . ." **Moad**, 496 S.W.2d at 798. To establish the fifth element of his claim, Plaintiff must show that Advance America's conduct was actuated by malice. "Three degrees of malice exist for purposes of actions for malicious prosecution. 'Actual malice' means ill will, spite, personal hatred, or vindictive motives. "Legal malice' embraces any improper motive. 'Malice in law' is a wrongful act done intentionally without just cause or excuse. A plaintiff suing for malicious prosecution must prove legal malice, i.e. that the defendant initiated the prosecution for a purpose other than that of bringing an offender to justice." **Bramon**, 945 S.W.2d at 684 (internal citations omitted); accord **Fust v. Francois**, 913 S.W.2d 38, 50 (Mo. Ct. App. 1995). Such malice has been shown by angry and vindictive words. See e.g. **Jacobs**,

46 S.W.3d at 50 (calling plaintiff "son of a bitch" and using profanities was sufficient showing of malice); **Wetherill v. Hunt**, 834 S.W.2d 199, 203 (Mo. Ct. App. 1991) (malicious prosecution defendant's angry and violent reaction to plaintiff and his belief that plaintiff was a "terrorist" engaged in "terrorist acts" was sufficient showing of malice in law to present jury question); **Chapman v. Duraski**, 721 S.W.2d 184, 187 (Mo. Ct. app. 1986) (jury could have found malice from evidence that malicious prosecution defendant was angry with plaintiff for being "flipped off").

Plaintiff argues he has made a submissible case on the question of malice by showing that Beck referred to him as a "dipstick" and Richardson informed Beck the morning of the preliminary hearing that she was going to "do [her] best to make sure [they] get this guy," referring to Plaintiff.  Cf. **Cassady**, 167 F.3d at 1219 (finding no malice when record lacked any indication that store had any motivation for shoplifting prosecution other than enforcing law and store's own policy to bar any person shown to have posed shoplifting risk).  Beck explained in his deposition that the "dipstick" reference was made out of frustration that Plaintiff was not returning his calls.  Richardson explained in her deposition that her intention was merely to "[g]et the truth" "as to what happened with the checks."  (Pl. Ex. G at 38.)  A jury could disbelieve these explanations and find that Beck and Richardson were angry or vindictive.[16]  A jury will not hear these explanations, however, because the Court has found, as explained above, that Plaintiff has failed to establish that the criminal proceedings were terminated in his favor and that there was no probable cause for the prosecution – two of the six elements in a

---

[16]Although malice may be inferred from a lack of probable cause, see **Turman**, 768 S.W.2d at 112, the Court could find no case law requiring the opposite – the lack of malice must be inferred from the presence of probable cause.

malicious prosecution case. Because a failure to make the necessary showing on any of the six elements defeats a malicious prosecution case, summary judgment shall be granted Advance America on Count I.

       False Arrest/Imprisonment. In his claims for false arrest/imprisonment, Plaintiff argues that false information given by Richardson maliciously or negligently led to his arrest and imprisonment. To prevail on these claims, Plaintiff must show that he was confined against his will and without legal justification. **White**, 519 F.3d at 815; accord **Kurtz v. City of Shrewsbury**, 245 F.3d 753, 757 (8th Cir. 2001); **Desai v. SSM Health Care**, 865 S.W.2d 833, 836 (Mo. Ct. App. 1993). "The constituent elements of false imprisonment are the detention or restraint of the plaintiff against his will, and the unlawfulness of the detention or restraint." **Id.** Although a defendant may be liable for instigating, causing or procuring the arrest, **id.**, "[m]erely providing information to the police is insufficient to find that the defendant caused the arrest," **Blue v. Harrah's North Kansas City, LLC**, 170 S.W.3d 466, 472 (Mo. Ct. App. 2005). Additionally, as noted by Advance America, in a claim of false arrest a "prima facie showing of the presence of probable cause is conclusive unless rebutted by evidence that false testimony was the basis of the charge and that the falsity, if so, was discoverable upon reasonable investigation." **Marcum v. Sagehorn**, 660 S.W.2d 426, 429 (Mo. Ct. App. 1983) (internal quotations omitted).

       Both parties agree that a finding of probable cause in the context of the malicious prosecution claim is a finding of probable cause in the context of the false arrest/imprisonment

claims.[17]   Accordingly, for the reasons set forth above, Advance America will be granted summary judgment also on Counts II and III.

## Conclusion

Plaintiff has failed to make a sufficient showing of a genuine issue of material fact whether the criminal proceedings against him for stealing from Advance America terminated in his favor and whether the stealing charge lacked probable cause.  Consequently, Advance America will be granted summary judgment on his claims for malicious prosecution and false arrest and imprisonment.  Therefore,

**IT IS HEREBY ORDERED** that the motion for summary judgment of Advance America, Cash Advance Centers of Missouri, Inc., is **GRANTED**.  [Doc. 67]

---

[17]The parties dispute whether Plaintiff was detained against his will.   In a false arrest/imprisonment claim, "[a]lthough physical restraint is not essential, there must, in absence of such restraint, be words or conduct that induce the reasonable belief that resistence or attempted flight would be futile."  **Clark v. Skaggs Cos.**, 724 S.W.2d 545, 549 (Mo. Ct. App. 1986).  Plaintiff testified that the officer processing his bond was told not to let Plaintiff leave until the warrant papers arrived.  See **Id.** (store patron's belief that flight would be futile was reasonable given (i) request by security guard that she accompany him and (ii) that she did not leave until her request for permission to leave was granted).  The question whether this is sufficient to present a jury question on whether he had a reasonable belief that he was not free to leave need not be reached because the existence of probable cause is conclusive.

**IT IS FURTHER ORDERED** that the motion for summary judgment of Advance America, Cash Advance Centers of Missouri, Inc., to strike is **DENIED** as moot. [Doc. 75]

An appropriate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  3rd  day of May, 2010.